```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
THE PORT AUTHORITY OF NEW YORK AND  :
NEW JERSEY; WORLD TRADE CENTER      :
PROPERTIES LLC; SILVERSTEIN         :
PROPERTIES, INC.; SILVERSTEIN WTC   :
MGMT. CO. LLC; 1 WORLD TRADE        :
CENTER LLC; 2 WORLD TRADE CENTER    :
LLC; 4 WORLD TRADE CENTER LLC;      :
5 WORLD TRADE CENTER LLC; and WTC   :
RETAIL LLC,                         :
                                    :
          Plaintiffs,               :    06 Civ. 5002 (MBM)
                                    :
     -against-                      :    OPINION AND ORDER
                                    :
ALLIANZ INSURANCE COMPANY;          :
INDUSTRIAL RISK INSURERS;           :
TRAVELERS INDEMNITY COMPANY; ROYAL  :
INDEMNITY COMPANY; GULF INSURANCE   :
COMPANY; ZURICH AMERICAN INSURANCE  :
CO.; and EMPLOYERS INSURANCE        :
COMPANY OF WAUSAU,                  :
                                    :
          Defendants.               :
-----------------------------------X
```

APPEARANCES

MILTON H. PACHTER, ESQ.
MEGAN LEE, ESQ.
(Attorneys for plaintiff the Port Authority of New York and New Jersey)
225 Park Avenue South, 13th Floor
New York, NY 10003
(212) 435-3435

TIMOTHY G. REYNOLDS, ESQ.
(Attorney for plaintiff the Port Authority of New York and New Jersey)
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
(212) 735-3000

MARC WOLINSKY, ESQ.
MEREDITH L. TURNER, ESQ.
WILLIAM EDWARDS, ESQ.
(Attorneys for plaintiffs World Trade Center Properties LLC,
Silverstein Properties Inc., Silverstein WTC Mgmt. Co. LLC, 1
World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade
Center LLC, and 5 World Trade Center LLC)
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
(212) 403-1000

BLAIR G. CONNELLY, ESQ.
PETER ROSEN, ESQ.
(Attorneys for plaintiff WTC Retail, LLC)
Latham & Watkins
885 Third Avenue
New York, NY 10022
(212) 906-1200

DALE C. CHRISTENSEN, JR., ESQ.
JOHN J. GALBAN, ESQ.
(Attorneys for defendant Allianz Global Risks US Insurance
Company)
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
(212) 574-1200

JOHN B. MASSOPUST, ESQ.
RICHARD L. VOELBEL, ESQ.
(Attorneys for defendant Allianz Global Risks US Insurance
Company)
Zelle, Hofmann, Voelbel, Mason & Gette LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
(612) 339-2020

CATHERINE M. COLINVAUX, ESQ.
(Attorney defendant Allianz Global Risks US Insurance Company)
Zelle, Hofmann, Voelbel, Mason & Gette LLP
950 Winter Street, Suite 1300
Waltham, MA 02451
(781) 466-0700

BARRY R. OSTRAGER, ESQ.
MARY KAY VYSKOCIL, ESQ.
(Attorneys for defendant Industrial Risk Insurers)
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

MICHAEL H. BARR, ESQ.
SANDRA D. HAUSER, ESQ.
EDWARD J. REICH, ESQ.
(Attorneys for defendant Royal Insurance Company)
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6700

JOHN EDUARD BARRY, ESQ.
(Attorney for defendant Zurich American Insurance Company)
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

CHRISTOPHER STEPHEN FINAZZO, ESQ.
MICHAEL JOSEPH MERNIN, ESQ.
RPBERT F. COSSOLINI, ESQ.
(Attorneys for defendant Employers Insurance Company of Wausau)
Budd Larner, P.C.
11 Penn Plaza, Fifth Floor
New York, NY 10001
(212) 946-4966

MICHAEL B. MUKASEY, U.S.D.J.

This action is the latest but regrettably not the last chapter in the ongoing struggle over the insurance proceeds available to rebuild the World Trade Center complex ("the WTC") destroyed almost five years ago. Plaintiffs ("the Insureds"[1]) seek a declaration that the "Conceptual Framework" agreed upon to redevelop the WTC will not affect recovery rights under the property insurance policies issued by defendants ("the Insurers"[2]). IRI, with the consent of the other Insurers, removed this action to federal court from the Supreme Court of the State of New York, New York County, alleging subject matter jurisdiction pursuant to Section 408(b)(3) of the Air Transportation Safety and System Stabilization Act of 2001 ("the Air Safety Act"), Pub. L. No. 107-42, 115 Stat. 230, 241 (codified as amended at 49 U.S.C. § 40101 note). The Insureds move to remand pursuant to 28 U.S.C. § 1447(c), arguing that this court lacks subject matter jurisdiction because the action falls

---

[1] The Insureds are the Port Authority of New York and New Jersey ("the Port Authority"), World Trade Center Properties LLC, Silverstein Properties, Inc., Silverstein WTC Mgmt. Co. LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, 5 World Trade Center LLC (collectively, "the Silverstein Parties"), and WTC Retail LLC ("WTC Retail").

[2] The Insurers are Allianz Insurance Company ("Allianz"), Industrial Risk Insurers ("IRI"), Travelers Indemnity Company, Royal Indemnity Company ("Royal"), Gulf Insurance Company, Zurich American Insurance Co., and Employers Insurance Company of Wausau ("Wausau").

1

outside the scope of the Air Safety Act's jurisdictional grant.[3]
For the reasons set forth below, the Insureds' motion is granted
and this action is remanded to the New York Supreme Court.

I.

The facts giving rise to the parties' dispute over the
amount of insurance recoverable for the destruction of the WTC
are documented in several prior opinions in a related action, <u>SR
International Business Insurance Co.</u> v. <u>World Trade Center
Properties LLC</u>, No. 01 Civ. 9291 (MBM), and will not be revisited
here. Nor is there presently a need to recount in detail the
history of the litigation in the related action. It suffices to
note that all parties to the present action are, in some form,
named in the related action, which has resolved, and continues to

---

[3] IRI opposes the Insureds' motion on behalf of all defendants. Allianz asks separately that this court deny the remand motion without prejudice pending resolution of common issues of law and fact in related litigation discussed below. I will briefly deal with and deny Allianz's request now. Allianz asks me to follow Judge Hellerstein's example in <u>In re September 11 Litigation</u>, Nos. 21 MC 97, 101, & 102 (AKH), 2006 WL 1650679, (S.D.N.Y. June 14, 2006). In that case, Judge Hellerstein invoked his "case management discretion" to put off deciding a motion to remand until after he had ruled on immunity defenses asserted by the defendants and "whether such defenses may constitute the basis of an exclusive federal jurisdiction relating to federal officer immunity." <u>Id.</u> at *2. In other words, he chose to answer some jurisdictional questions before other jurisdictional questions. No analogous situation exists here, and Allianz's request seems merely a ploy to avoid the consequences of the removal statute. <u>See</u> note 5 <u>infra</u>. The balance of this opinion concerns IRI's opposition to the remand motion.

resolve, numerous coverage issues. For example, the Insureds and six of the seven Insurers named as defendants in the present action[4] are currently parties to an appraisal proceeding established in the related action to determine the value of three categories of damage or expense set forth in the pertinent insurance policies.

The facts relevant to the present action are as follows. On April 26, 2006, the Insureds announced that they had agreed to a "Conceptual Framework" ("the Framework") that would "ensure the prompt redevelopment" of the WTC. (Compl. ¶ 1) Under the Framework, the Silverstein Parties would cede control of the development of the One World Trade Center site (the Freedom Tower site) and the site now occupied by the Deutsche Bank building (Site 5) to the Port Authority, while maintaining control over the development of three sites on Church Street (Sites 2, 3, and 4). (Id. ¶ 2) WTC Retail, a subsidiary of the Port Authority that may be acquired by a Silverstein-controlled entity, would develop the retail component. (Id.) The insurance proceeds still collectible under the policies in effect on 9/11 would be allocated to reflect the new division of rebuilding responsibilities. (See id. ¶ 33)

Because financing of the rebuilding plan contemplated

---

[4] Defendant Wausau, whose coverage is governed by the "WilProp" form, is not involved in the appraisal proceeding.

3

by the Framework relies on the availability of the remaining insurance proceeds, the Insureds sought assurances from the WTC insurers that the Framework would not violate any anti-assignment provisions in the applicable insurance policies. (Id. ¶ 35) The details of the Insureds' efforts to obtain these assurances, discussed in the parties' submissions, are not relevant here; ultimately, the Insureds received adequate assurances from some of the WTC insurers (see Insureds' Mem. 2), but were not satisfied with the responses they received from seven others (see Compl. ¶ 36).

On June 26, 2006, the Insureds filed the current lawsuit in the Supreme Court of New York State, New York County, naming as defendants the seven insurers who had provided the problematic assurances. The Insureds' complaint contains a single cause of action and seeks a declaration that "the Conceptual Framework, and the agreements and transactions contemplated therein, will not affect adversely in any fashion plaintiffs' recovery under the World Trade Center Property Insurance Program and, in particular, that the Conceptual Framework, and the agreements and transactions contemplated therein, do not constitute an impermissible assignment that reduces the recovery available to the Insureds." (Id., Wherefore Clause, ¶ A) The complaint asks also that the Supreme Court retain jurisdiction "to assure that each of the defendant[s]

4

complies fully with its ongoing insurance coverage obligations," and award plaintiffs the costs of bringing suit. (Id. ¶¶ B, C)

On June 28, 2006, IRI, on behalf of all defendants, removed plaintiffs' action to this court. (See Turner Aff. ¶ 3; Notice of Removal) On June 30, plaintiffs moved for a remand to state court.

II.

A federal district court must remand a case to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[5] 28 U.S.C. § 1447(c) (2000). The burden of proving subject matter jurisdiction lies with the party that removed the action to federal court. See United Food & Commercial Workers Union v.

---

[5] Defendants have followed plaintiffs' remand motion with two motions of their own. Allianz, joined by the other defendants, moves to dismiss this action pursuant to the "prior pending action" or "first-filed" doctrine ("the Allianz Motion"). Royal, joined by the other defendants, moves to dismiss or enjoin the present action pursuant to the All Writs Act, 28 U.S.C. § 1651, and exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283 ("the Royal Motion"). Neither motion is yet fully briefed. Even if there were no other barriers to ruling on these motions at this point in time, I would not hold the determination of subject matter jurisdiction in abeyance pending their resolution -- a course of action that seems to offend the spirit, and perhaps the letter, of the removal statute. Because I find this case must be remanded to state court, I have no authority to decide the Allianz motion. I will decide the Royal motion, which seeks an injunction under this court's jurisdiction in the related SR International action, see In re The Prudential Ins. Co. of Am. Sales Practices Litig., 314 F.3d 99, 103 (3d Cir. 2002), in a separate opinion.

5

Centermark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994); see also Frontier Ins. Co. v. MTN Owner Trust, 111 F. Supp. 2d 376, 378 (S.D.N.Y. 2000) ("It is axiomatic that, for removal to be considered proper, the removing party must demonstrate that this Court is endowed with the requisite subject matter jurisdiction."). The parties to an action cannot confer subject matter jurisdiction on a federal court, either through waiver or estoppel.[6] Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46-47 (2d Cir. 2002); cf. Indep. Investor Protective League v. SEC, 495 F.2d 311, 313 (2d Cir. 1974) ("[S]ince the question of standing goes to our jurisdiction, all defenses in the nature of waiver or estoppel are precluded." (citation omitted)).

III.

The parties do not dispute that the sole basis for jurisdiction asserted in IRI's removal petition is Section 408(b)(3) of the Air Safety Act. (See Notice of Removal ¶¶ 7-10) That section provides:

> The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury,

---

[6] Thus, despite the Insurers' claims to the contrary (IRI Opp'n Mem. 2), whatever position the Insureds took toward subject matter jurisdiction in past related litigation is irrelevant.

> or death) resulting from or relating to the
> terrorist-related aircraft crashes of
> September 11, 2001. Air Safety Act §
> 408(b)(3).

According to IRI, Section 408(b)(3) "confers on this Court broad subject matter jurisdiction over civil litigation arising out of the 9/11 terrorist attack" and thus covers plaintiffs' declaratory judgment action because the action plainly "relates to" 9/11. (IRI Opp'n Mem. 2, 7-9) The Insureds, relying primarily on <u>Canada Life Assurance Co.</u> v. <u>Converium Ruckversicherung (Deutschland) AG</u>, 335 F.3d 52 (2d Cir. 2003), dispute that the Air Safety Act can be read so broadly, and argue that the Act fails to confer jurisdiction here because the lawsuit does not require adjudication of any issue of law or fact concerning the events of 9/11. (Insurers Mem. 4-6; Insurers Reply Mem. 3-4) The Insureds are correct that the Second Circuit, relying on the same statutory language and legislative history that the Insurers invoke, has rejected the broad interpretation of Section 408(b)(3) that would give this court subject matter jurisdiction over the present action. Moreover, an amendment to the Air Safety Act that excludes "collateral source" litigation from Section 408(b)(3) appears to foreclose jurisdiction in this case.

Congress enacted the Air Safety Act in the immediate aftermath of 9/11 out of concern that the airline industry was on the brink of financial collapse. See <u>Canada Life</u>, 335 F.3d at

7

55; Int'l Fine Art & Antique Dealers Show Ltd. V. ASU Int'l, Inc., No. 02 Civ. 534 (DLC), 2002 WL 1349733, at *3 (S.D.N.Y. June 20, 2002). Most of the Act -- Titles I, II, III, and V -- is devoted to providing financial assistance to the airline industry and authorizing government outlays for airline safety and security improvements. However, the Act sought also to provide compensation to those who suffered physical harm and to the survivors of those who died on 9/11. See Airline Safety Act § 403. To accomplish this goal, Title IV of the Act established a scheme whereby 9/11 victims and their survivors could seek relief for harms suffered on 9/11 either by submitting claims for compensation from a federally-administered Victim Compensation Fund or by bringing civil lawsuits invoking a new federal cause of action that would serve as "the exclusive remedy for damages arising out of the hijacking and subsequent crashes of [the 9/11] flights." See id. §§ 405, 406, 408(b)(1). In order to protect the potential defendants in these lawsuits from financial ruin, Section 408(a) of the Act, as amended, limits the liability of the air carriers, aircraft manufacturers, airport sponsors, and entities with property interests in the WTC on 9/11 to the policy limits of their insurance coverage. See id. § 408(a), as amended by the Aviation and Transportation Security Act of 2001 ("Aviation Security Act") § 201(b)(2), Pub. L. No. 107-71, 115 Stat. 507, 646; see also In re WTC Disaster Site, 414 F.3d 352,

8

377-78 (2d Cir. 2005).

Because Section 408(b)(3) appears in a title of the Air Safety Act with the heading "Victim Compensation" and in a section that sets out the contours of a federal claim for damages "arising out of" the hijacking and the crashing of the planes used in the attacks, some courts initially interpreted the provision to provide jurisdiction only in actions brought by direct victims of the attacks or their survivors. See, e.g., Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's London, No. 01 Civ. 10023 (RO), 2002 WL 31056851, at *1 (S.D.N.Y. Sept. 13, 2002), aff'd on other grounds, 75 Fed. Appx. 799 (2d Cir. 2003); Goodrich Corp. v. Winterthur Int'l Am. Ins. Co., No. 5:02 Civ. 367, 2002 WL 31833646, at *4 (N.D. Ohio June 17, 2002). The Second Circuit has not read Section 408 in general, or Section 408(b)(3) in particular, so narrowly. See In re WTC Disaster Site, 414 F.3d at 375-80 (holding that Section 408 of Air Safety Act extended to claims brought by workers for respiratory injuries suffered during rescue and cleanup efforts at the WTC after attacks). However, this Circuit has rejected also the opposite extreme, pointing to the "absurd results" that would follow from reading Section 408(b)(3) to provide exclusive jurisdiction in the Southern District of New York for every action "involving economic losses that would not have been suffered 'but for' the events of September 11." Canada Life, 335

F.3d at 58-59.

Although the precise contours of Section 408(b)(3)'s reach remain unclear, it is the law in this Circuit that jurisdiction under Section 408(b)(3) does not extend to cases that do not "require adjudication of any issue of law or fact that concerns the events of September 11." Id. at 57, 59. Applying this standard, the Canada Life Court held that Section 408(b)(3) did not create jurisdiction over a contract dispute between a reinsurer and its retrocessionaire for failure to reimburse payments traceable to life insurance and other claims by victims of the 9/11 attacks. See id. at 54, 57. The Court explained that "while the terrorist attacks of September 11 are alleged as a 'but for' cause of the contract dispute, the actual events of that day are irrelevant to a resolution of the dispute, even though the insurance losses were caused in part by them." Id. at 57.

Similarly, in In re September 11th Liability Insurance Coverage Cases, the District Court stressed that "[t]he meaningful inquiry [under Section 408(b)(3)] is whether a court must 'refer to or choose among competing descriptions of the events of September 11th itself -- a circumstance that otherwise creates the possibility of inconsistent and inefficient judgments . . . which is what Section 408(b)(3) truly seeks to avoid.'" 333 F. Supp. 2d 111, 119 (S.D.N.Y. 2004) (quoting Combined Ins.,

75 Fed. Appx. at 801). The Court found supplemental jurisdiction over the plaintiffs' claims in an action by the Port Authority and Silverstein Parties to determine the scope of their insurers' obligations to defend them in certain lawsuits, but declined to address whether the action was so "tangentially related" to the 9/11 attacks that the Air Safety Act did not provide an independent basis for jurisdiction. See id. at 114, 118-19; cf. Int'l Fine Art, 2002 WL 1349733, at *6 (rejecting Air Safety Act jurisdiction in action brought by insured against insurer for losses incurred when 9/11 forced the cancellation of insured's antique shows); but see Hold Bros., Inc. v. Hartford Cas. Ins. Co., 357 F. Supp. 2d 651, 653 (S.D.N.Y. 2005) (assuming, without discussion, Air Safety Act jurisdiction as to an action by a WTC tenant whose premises were destroyed on 9/11 against a primary insurer for business interruption insurance proceeds; but, in any event, basing jurisdiction alternatively on diversity).

Turning to the Insureds' remand motion, although this lawsuit has a stronger connection to the events of 9/11 than the Canada Life lawsuit, this case is still, at bottom, a contract dispute that does not "require adjudication of any issue of law or fact that concerns the events of September 11." Canada Life, 335 F.3d at 57. The question presented by plaintiffs' complaint -- whether the Insurers' obligation to compensate the Insureds is affected by the Framework -- is a matter of pure contract

11

interpretation that does not require this court to revisit what happened on 9/11. As in Canada Life, the "actual events of that day are irrelevant." Id. Indeed, the same coverage question would be presented if the Insureds were rebuilding the WTC after an earthquake, gas explosion, or some other natural or man-made calamity. Absent any non-conclusory explanation by IRI regarding how the specific circumstances of the WTC's destruction on 9/11 bear on the coverage question posed by plaintiffs' complaint, the lawsuit is nothing more than an action "involving economic losses that would not have been suffered 'but for' the events of September 11," Canada Life, 335 F.3d at 59, and does not fall within the Air Safety Act's jurisdictional grant.

IRI's argument that there is no meaningful difference between the cause of action in plaintiffs' complaint and the many claims being adjudicated by this court in the related SR International litigation misses the point. (See IRI Opp'n Mem. 10-12) Jurisdiction over the related action derives from the diversity statute, 28 U.S.C. § 1332, and the supplemental jurisdiction statute, 28 U.S.C. § 1367, not Section 408(b)(3) of the Air Safety Act. See World Trade Center Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 163-65 (2d Cir. 2003) (declining to discuss Air Safety Act jurisdiction in order to avoid "constitutional concerns" implicated by reading the Act broadly). In the present action, IRI has not alleged diversity,

12

and, regardless of whether this court could resolve the coverage question posed by plaintiffs' complaint through supplemental jurisdiction in the related action, supplemental jurisdiction cannot supply the original jurisdiction needed to remove a state court complaint under 28 U.S.C. § 1441(a) -- "even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, and even if removal would be efficient." Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996) citations omitted). "Absent complete pre-emption, the plaintiffs in a nondiversity action are masters of their complaint and may avoid federal subject-matter jurisdiction by relying exclusively on state law." Id.; see also McClelland v. Longhitano, 140 F. Supp. 2d 201, 203-04 (N.D.N.Y. 2001) (noting that "[a]lmost every single authority to address this issue" has held that supplemental jurisdiction cannot support removal and collecting cases); In re Rosenkranz, No. 01 Civ. 635 (WK)(DF), 2001 WL 406250, at *1 (S.D.N.Y. Apr. 19, 2001) (collecting cases); 13B Charles Alan Wright, Arthur R. Miller, Edeard H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3567.3 (Supp. 2006) ("The supplemental jurisdiction statute is not a source of original jurisdiction and a case cannot be . . . removed on grounds of supplemental jurisdiction alone."). Thus, despite the policy appeal of IRI's argument that plaintiffs' complaint

13

and the larger coverage dispute "should be litigated in a single forum, before a single judge, as a single case" (IRI Opp'n Mem. 2), that argument cannot supply the basis for original jurisdiction otherwise lacking in IRI's removal petition.

Finally, although the Silverstein Parties have not raised the issue, I think it bears mention that, even if this action did have the factual connection to 9/11 required by Canada Life, it would still not give rise to jurisdiction under the Air Safety Act because it is a "collateral source" lawsuit exempted from Section 408(b)(3)'s jurisdictional grant. Specifically, Section 408(c), as amended by the Aviation Security Act, provides that Section 408(b)(3) "do[es] not apply to civil actions to recover collateral source obligations." Air Safety Act § 408(c), as amended by Aviation Security Act § 201(b)(3). A "collateral source" is defined elsewhere as "all collateral sources, including life insurance, pension funds, death benefit programs, and payments by Federal, State, or local governments related to the terrorist-related aircraft crashes of September 11, 2001." Air Safety Act § 402(4). The main purpose of Section 408(c) appears to be to preserve the ability of 9/11 victims to bring traditional lawsuits against their primary insurers and other potential benefit providers despite Section 408(b)(1)'s "exclusive" cause of action and Section 408(b)(3)'s "exclusive" jurisdictional grant to the Southern District of New York. Id.

14

§§ 408(b)(1)-(3). At least one other court in this District has concluded that the "collateral source" exemption applies to lawsuits brought by property owners whose premises were damaged on 9/11 against their primary insurers for proceeds under their commercial property insurance policies. See Indian Chef, Inc. v. Fire & Cas. Ins. Co., No. 02 Civ. 3401 (DLC), 2004 WL 420034, at *2 (S.D.N.Y. Mar. 9, 2004). I agree with Judge Cote's conclusion in Indian Chef: Section 408(b)(3) encompasses "any claim for loss of property, personal injury, or death," and Section 408(c) makes no distinction among types of collateral source obligations. Suits against primary insurers brought by property owners for damages suffered on 9/11 are, for these purposes, treated no different from suits against primary insurers brought by individuals (or their relatives) injured or killed on 9/11.[7]

---

[7] This conclusion does not affect jurisdiction over the SR International litigation, which, as I explained earlier, is supported by diversity and supplemental jurisdiction, not Section 408(b)(3) of the Air Safety Act.

*			*			*

For the reasons set forth above, plaintiffs' motion pursuant to 28 U.S.C. § 1447(c) is granted, and this case is remanded to the Supreme Court of the State of New York, New York County, for further proceedings.

SO ORDERED:

Dated:	New York, New York
		August 3, 2006

Michael B. Mukasey
U.S. District Judge